UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| KATIE COBLENTZ [FKA KATIE ANDERSON], | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. _____ |
| | ) | |
| v. | ) | **Jury Trial Demanded** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.    Plaintiff Katie Coblentz, by and through her attorneys, brings this complaint seeking compensation for harm caused by Fenway Community Health Center, Inc. ("Fenway Health") and its employees, agents, and/or contractors Molly McHenry NP, Renee Randazzo, Ralph Vetters MD, Samantha Hodgins NP, Karla HoxhaBrown NP, Samantha Gendron RN, Amy Teasdale RN, Cindy Castor LPN, Rachel Kahn LMHC, Adrianna Graziano MA, Scott Corbett MA, Lissette Garcia, Doreen Clark, and Jojo Amanfu (together with Fenway Health, referred to herein as "Fenway Health and professionals there" or "the Responsible Parties"), and seeks justice for the tragic injuries to Katie after Fenway Health and professionals there failed to render proper and appropriate care and treatment in accordance with the recognized standards of acceptable professional practice. Katie hereby alleges as follows based on her personal experience and available medical records:

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346.

3.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

1

## THE PARTIES

4.      Plaintiff Katie Coblentz, who suffered injuries as a result of the actions and inaction of Fenway Health and professionals there, brings this complaint seeking the relief requested herein under the Federal Tort Claims Act.

5.      Plaintiff brings this complaint against the United States of America based on her understanding that Fenway Health and its employees, agents, and/or contractors have federal Public Health Service deemed status with respect to the claims asserted herein.

6.      Fenway Community Health Center, Inc., upon information and belief, is a federally-qualified health center with Public Health Service deemed status with respect to the claims asserted herein. Fenway Health is responsible for each of the actions and failures to act alleged herein, including each of the actions and failures to act by each of the individuals referenced herein because those individuals were acting within the scope of their employment and agency at Fenway Health at all relevant times.

7.      Molly McHenry NP, upon information and belief, is a nurse practitioner who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

8.      Renee Randazzo, upon information and belief, is an individual who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

9.      Ralph Vetters MD, upon information and belief, is a physician who at all relevant times was responsible for treating Plaintiff, was acting within the scope of his employment and

agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

10.     Samantha Hodgins NP, upon information and belief, is a nurse practitioner who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

11.     Karla Hoxha-Brown NP, upon information and belief, is a nurse practitioner who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

12.     Samantha Gendron RN, upon information and belief, is a nurse who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

13.     Amy Teasdale RN, upon information and belief, is a nurse who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

14.     Cindy Castor LPN, upon information and belief, is a nurse who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

15.     Rachel Kahn LMHC, upon information and belief, is a licensed mental health counselor who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

16.     Adrianna Graziano MA, upon information and belief, is a medical assistant who at all relevant times was responsible for treating Plaintiff, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

17.     Scott Corbett MA, upon information and belief, is a medical assistant who at all relevant times was responsible for treating Plaintiff, was acting within the scope of his employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

18.     Lissette Garcia, upon information and belief, is an individual working in patient services who at all relevant times was responsible for assisting with Plaintiff's treatment, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

19.     Doreen Clark, upon information and belief, is an individual working in patient services who at all relevant times was responsible for assisting with Plaintiff's treatment, was acting within the scope of her employment and agency at Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

20.     Jojo Amanfu, upon information and belief, is an individual working as a healthcare navigator and referrals coordinator who at all relevant times was responsible for assisting with Plaintiff's treatment, was acting within the scope of her employment and agency at

Fenway Health, and has Public Health Service deemed status with respect to the claims asserted herein.

## FACTUAL OVERVIEW

21.     Plaintiff Katie Coblentz seeks justice for the horrific and lasting damage she suffered at the hands of health care providers she trusted to take care of her and not harm her.

22.     Instead of rendering proper and appropriate care to her, Fenway Health and professionals there misled Katie into so-called "gender-affirming" medical procedures, including testosterone injections at the young age of only 19, a double mastectomy the following year at age 20, and a complete hysterectomy and oophorectomy four years after that at age 24.

23.     Katie's injuries are far-reaching and are psychological, physical, and emotional in nature. Had Fenway Health and professionals there rendered proper and appropriate care, and not misled Katie into the harmful medical procedures, Katie would still have her natural, healthy body and functions intact.

24.     As a result of the testosterone the Responsible Parties misled Katie to take, her bodily frame is deformed, out of normal proportion, causing her great pain and discomfort; she has experienced vaginal atrophy and pain in her genitals; and her natural voice has changed permanently and irreversibly to a deep, male-sounding voice.

25.     As a result of the double mastectomy the Responsible Parties misled Katie to undergo, she has lost her healthy breasts and suffered great pain. She will never be able to enjoy having her natural breasts. She will never be able to nurse a child.

26.     As a result of the complete hysterectomy and oophorectomy the Responsible Parties misled Katie to undergo, she has permanently and irreversibly lost the ability to live a normal life as a young woman. She will never know the joy of experiencing a pregnancy, giving

birth to a child, raising a biological child of her own, or having grandchildren. The actions and inaction of the Responsible Parties sent Katie into menopause at the young age of only 24.

27.    These traumatic physical injuries have taken a psychological and emotional toll on Katie. They are expected to continue to take a psychological and emotional toll on her as she lives with those injuries for the rest of her life and tries to cope.

28.    Katie has suffered extreme emotional distress and mental anguish as a result of the actions and inaction of the Responsible Parties.

29.    Plaintiff brought this case as an administrative claim before the U.S. Department of Health and Human Services against the United States of America in accordance with the Federal Tort Claims Act, based on her understanding that Fenway Health and its employees, agents, and/or contractors have federal Public Health Service deemed status with respect to the claims asserted herein. Consistent with the FTCA and HHS guidance, because the administrative claim was not settled or otherwise resolved in six months, Plaintiff now files a civil action against the United States in the appropriate United States District Court.

**ADDITIONAL FACTS AND ALLEGATIONS RELEVANT TO ALL CLAIMS**

**A.  Katie suffered from numerous mental health struggles.**

30.    Katie Coblentz grew up in Lowell, Massachusetts, in a largely supportive family. She lived with her father, mother, and younger sister. She struggled with social interactions and found it difficult to make friends. She experienced anxiety.

31.    In May 2018, when Katie was 22 years old, a psychiatric care provider unrelated to Fenway Health diagnosed her with Unspecified Anxiety Disorder, Obsessive-Compulsive Disorder, and Autism Spectrum Disorder. The provider noted that, in addition to Katie's symptoms consistent with anxiety, OCD, and autism, she possibly suffered from comorbid

attention deficit issues. The psychiatric care provider prescribed antidepressant medication for Katie based on these diagnoses.

**B.  Fenway Health knowingly misled Katie into testosterone injections without any psychological or mental health evaluation, much less a proper and adequate one.**

32.     A few years prior to being seen by that psychiatric care provider, in or about March 2015, when Katie was only 19 years old, she visited Fenway Health's Sidney Borum, Jr. Health Center for gender-identity issues.

33.     From what appears in the records Fenway Health produced to Plaintiff prior to the filing of this complaint, no one at Fenway Health properly assessed Katie's mental health issues. As a result, those mental health issues were not properly addressed by Fenway Health and professionals there.

34.     Instead, Katie briefly met with an individual named Renee Randazzo, who, upon information and belief, had recently obtained a counseling degree but was not a licensed counselor.[1]

35.     Ms. Randazzo filled out a three-page Fenway Health form titled "Hormone Readiness Report & Referral," which appeared to be an intake form for Katie to begin testosterone injections. In that form, Ms. Randazzo indicated Katie should be "[r]efer[red] for medical clearance and treatment as appropriate."

---

[1] According to information published in connection with the Central Texas Transgender Health Conference, as of September 2017, Renee Randazzo had moved to Texas and was listed as "LPC Intern supervised by Sara Weber, LPC-S." Central Texas Transgender Health Conference, Sept. 15-16, 2017, Renee Randazzo, LPC-Intern, https://centraltexastransgenderheal2017.sched.com/speaker/renee.randazzo. Ms. Randazzo was described as having been the "Transgender Health Patient Advocate" when at Fenway Health. *Id.* Ms. Randazzo no longer pursues licensed counseling and instead offers "coaching" services under the trade name "Gender Witch Coaching." Gender Witch Coaching, https://www.genderwitchcoaching.com/.

36.     Ms. Randazzo did not purport to diagnose Katie with gender dysphoria or gender-identity disorder. In fact, neither diagnosis appears in the lists of diagnoses in the records Fenway Health provided to Plaintiff prior to the filing of the complaint.[2]

37.     The form Ms. Randazzo filled out indicated that Katie was friends with boys during her childhood, and that during puberty she had long hair and wore pants and felt confusion and distress.

38.     Ms. Randazzo did not note that she explored or followed up on any of these issues.

39.     In particular, Ms. Randazzo did not note that she discussed any of Katie's mental health issues. There was no mention of recommending or referring Katie to therapy.

40.     Ms. Randazzo indicated Katie "ha[d] been medically evaluated for hormone treatments," but it appears from other notes that Katie did not meet with a medical provider until later that day, after she met with Ms. Randazzo, when she met with Molly McHenry NP.

41.     Ms. Randazzo also indicated Katie had received "education around realistic effects of hormone treatment," "education on the psychosocial and reproductive impact of hormone treatments," and "informed consent forms for hormone treatment and reproductive rights," but no such educational information or consent forms are contained in the records Fenway Health provided to Plaintiff prior to the filing of this complaint.

42.     In fact, true and accurate informed consent was not possible in the circumstances because Fenway Health (1) affirmatively misrepresented that testosterone was medically

---

[2] Notes from a May 3, 2016 visit with Rachel Kahn LMHC—a year after Fenway Health started Katie on testosterone—reflect that Ms. Kahn expressed her opinion that Katie "me[t] the criteria for Gender Dysphoria in Adolescents and Adults." Ms. Kahn expressed this opinion in connection with her purported "assessment" of Katie for "surgical chest wall reconstruction for gender affirmation"—a euphemism for the double mastectomy Fenway Health misled Katie into.

necessary and appropriate and that there was no alternative, (2) failed to explain the scientific

basis—and lack thereof—for the testosterone treatments, (3) failed to accurately describe the

costs and benefits of the treatments, and alternatives, including not implementing the treatments,

and (4) failed to disclose and explain fully to Katie the permanent, detrimental consequences

from taking testosterone.

43.     After meeting briefly with Ms. Randazzo, Katie met briefly with Molly McHenry

NP. As with Ms. Randazzo, Ms. McHenry did not purport to diagnose Katie with gender

dysphoria or gender-identity disorder either. As mentioned above, neither diagnosis appears in the

lists of diagnoses in the records Fenway Health provided to Plaintiff prior to the filing of this

complaint.

44.     Ms. McHenry made notes under a heading titled "History of Present Illness." The

notes indicated that Katie did not talk to people much, had suicidal ideation a few years ago,

realized she was not a boy during puberty, and started feeling discomfort with her gender in 2014

(a year prior to the visit at Fenway Health) but was not interested in therapy or in "having trans

community" [sic].

45.     Just as Ms. Randazzo did not note that she explored or followed up on any of the

issues she identified in her form, Ms. McHenry did not note that she explored or followed up on

any of the issues she identified in her notes.

46.     In particular, Ms. McHenry did not note that she discussed any of Katie's mental

health issues. There was no mention of recommending or referring Katie to therapy.

47.     Instead, Ms. McHenry noted merely that she "[d]iscussed process of starting

hormones" and that the next step would be for Katie to get a physical examination.

48.     Ms. McHenry also noted, "Discussed reproductive rights, pt is not intereseted

[sic] in having genetic children, this is not an issue for him [sic]." There was no mention in Ms. McHenry's notes of any exploration or follow-up regarding whether Katie was capable of knowing or deciding, at the young age of only 19 and with her ongoing mental health issues, whether she would ever want to become pregnant, give birth, raise a biological child, or have grandchildren.

49.    Again, true and accurate informed consent was not possible in the circumstances because Fenway Health (1) affirmatively misrepresented that testosterone was medically necessary and appropriate and that there was no alternative, (2) failed to explain the scientific basis – and lack thereof – for the testosterone treatments, (3) failed to accurately describe the costs and benefits of the treatments, and alternatives, including not implementing the treatments, and (4) failed to disclose and explain fully to Katie the permanent, detrimental consequences from taking testosterone.

50.    A couple months later, in or about May 2015, Katie visited Fenway Health's Sidney Borum, Jr. Health Center for the physical examination Molly McHenry NP prescribed as the next step in the process of starting testosterone injections.

51.    Ms. McHenry noted the physical as "normal" and that "[p]t has been cleared to start hormones by transgender team." Ms. McHenry did not note who the members of the "transgender team" were. Presumably, that was a reference to Ms. McHenry herself and Ms. Randazzo.

52.    Again, there was no mention in the notes of discussion of any of Katie's mental health issues or of recommending or referring Katie to therapy.

53.    Shortly thereafter, Amy Teasdale RN engaged in a "teaching session" with Katie for her first shot of testosterone. Ms. Teasdale noted that she engaged in "extensive coaching and

encouragement throughout" "the first T-shot teaching session" in which Ms. Teasdale instructed Katie in how to administer the shot.

54.     Fenway Health and professionals there prescribed the testosterone injections to Katie without true and accurate informed consent and without proper and adequate mental health evaluation and treatment. Fenway Health and professionals there continued to so prescribe the testosterone injections for approximately six and a half years, until in or about December 2021.

55.     Fenway Health and professionals there failed to disclose to Katie the true nature of the testosterone injections and the inability of the injections to cure her mental health issues. Instead, they misrepresented the testosterone injections as necessary, appropriate, and beneficial.

56.     As a result of the Responsible Parties' misrepresentations, omissions, negligence, and wantonness, Katie received the testosterone injections and suffered, and continues to suffer, extreme physical, psychological, and emotional injury.

57.     After misleading Katie into taking the testosterone injections, and continuing to mislead her to continue taking those injections, Fenway Health and professionals there misled Katie into an unnecessary and harmful double mastectomy.

C.  **Fenway Health knowingly misled Katie into double mastectomy surgery on the basis of one intake meeting and one follow-up appointment a few days later with a counselor Katie had never met, did not meet again, and who failed to adequately address Katie's mental health situation and issues.**

58.     In or about May 2016, approximately one year after starting the testosterone injections, Katie met with Rachel Kahn LMHC for an "assessment of readiness/appropriateness for surgical chest wall reconstruction for gender affirmation"—in other words, assessment for a double mastectomy. Katie was only 20 years old at the time.

59.     Ms. Kahn met with Katie only briefly, in one intake appointment and one follow-up appointment a few days later. Based on those brief encounters, Ms. Kahn assessed Katie as

suitable for a double mastectomy and provided a "letter of support" for the surgery.

60.    Ms. Kahn's notes are unclear as to the purported bases for her assessment of Katie as suitable for a double mastectomy. In notes from the May 3, 2016 intake visit, Ms. Kahn noted her opinion that Katie "me[t] the criteria for Gender Dysphoria in Adolescents and Adults," but she followed that in the next paragraph, under the heading "Treatment Recommendations/Plan," by noting her recommendation that Katie "complete an assessment for readiness/appropriateness for surgical chest wall reconstruction for gender affirmation."

61.    In notes from the May 6, 2016 follow-up visit, Ms. Kahn noted she "[c]ontinued to gather information to assess" Katie's "appropriateness" for the surgery, and Ms. Kahn noted that she drafted the "letter of support" and provided copies to Katie. However, in the notes, there is no clear statement that the surgery was in fact appropriate for Katie or explanation as to why Ms. Kahn drafted the letter and what the letter was based on. Moreover, Ms. Kahn failed to adequately address Katie's mental health situation and issues. Ms. Kahn did not inquire into or acknowledge, much less address, Katie's ongoing mental health struggles and comorbidities.

62.    After meeting with Katie in the May 3, 2016 intake appointment, and the May 6, 2016 follow-up visit to approve Katie for the double mastectomy surgery, it appears Ms. Kahn never met with Katie again. Nor did Katie establish a mental health care relationship with any other therapist at Fenway Health.

63.    Fenway Health and professionals there failed to disclose to Katie the true nature of the double mastectomy surgery and the inability of the surgery to cure her mental health issues. Instead, they misrepresented the surgery as necessary, appropriate, and beneficial.

64.    As a result of the Responsible Parties' misrepresentations, omissions, negligence, and wantonness, Katie underwent the double mastectomy surgery in or about August 2016 at age

20 and suffered, and continues to suffer, extreme physical, psychological, and emotional injury.

65.     After misleading Katie into undergoing an unnecessary and harmful double mastectomy, Fenway Health and professionals there misled Katie into undergoing an unnecessary and harmful complete hysterectomy and oophorectomy.

**D.  Fenway Health knowingly misled Katie into a complete hysterectomy and oophorectomy surgery without any psychological or mental health evaluation, much less a proper and adequate one.**

66.     Less than two years later, when Katie was only 22 years old, Ralph Vetters MD at Fenway Health misled and coached Katie into undergoing an unnecessary and harmful complete hysterectomy and oophorectomy.

67.     In or about January 2018, Dr. Vetters saw Katie for regular follow-up regarding the testosterone injections. Dr. Vetters noted that Katie was experiencing "[i]diopathic pelvic pain," which he attributed as "likely due to testosterone and uterine atrophy."

68.     Despite noting the pelvic pain as likely due to the testosterone injections he and Fenway Health were prescribing, and the effects of those injections such as uterine atrophy, Dr. Vetters proceeded to use the pelvic pain as a pretext to guide Katie into a hysterectomy procedure he knew she did not need and would not be good for her.

69.     Dr. Vetters documented his fraudulent scheme, which he carried out on Fenway Health's behalf, in the following "patient instruction[]:" "Call Dr. Gomez-Carrion at th Beth Israel, tell them you're a trns guy with chronic elvicpain and need to se Dr. GC for hysterectomy consult. Then call us to let us know when you're seeing her so we can close the insurance loop in the referral [sic]."

70.     Dr. Vetters continued to mislead Katie into undergoing this unnecessary and harmful procedure. The following year, in or about January 2019, Dr. Vetters noted he would find

someone at Tufts to refer Katie to for the hysterectomy, since a referral to Beth Israel would not be supported by her insurance.

71.     Fenway Health and professionals there failed to disclose to Katie the true nature of the complete hysterectomy and oophorectomy surgery and the inability of the surgery to cure her mental health issues. Instead, they misrepresented the surgery as necessary, appropriate, and beneficial.

72.     As a result of the Responsible Parties' misrepresentations, omissions, negligence, and wantonness, Katie underwent the complete hysterectomy and oophorectomy surgery in or about August 2020 at age 24 and suffered, and continues to suffer, extreme physical, psychological, and emotional injury. In addition to the injuries Katie experienced as a result of the loss of her uterus and ovaries, she also experienced physical, psychological and emotional injuries from an artery being cut during the procedure, which required her to receive multiple blood transfusions.

### E.  **Fenway Health failed to give due regard to and adequately address red flags and concerns regarding Katie's mental health situation and issues, and instead continued to negligently and wantonly prescribe testosterone injections to Katie.**

73.     As mentioned above, Fenway Health and professionals there continued to treat Katie inappropriately, negligently, and wantonly by prescribing and administering testosterone injections until in or about December 2021.

74.     In or about July 2021, almost a year after the hysterectomy, during a telehealth visit with Samantha Hodgins NP, Katie expressed interest in detransitioning so as to identify with her female sex. Ms. Hodgins noted that Katie expressed feeling that her mental health had not improved as a result of the testosterone injections and surgeries. Ms. Hodgins noted that Katie

felt she would be able "to better work through [her] emotional well being" if she was "[l]ess focused on physical changes."

75.    Despite these red flags, Ms. Hodgins did not note exploring or following up on any of them. Neither did she note expressing any concern or regret on the part of Fenway Health and professionals there for guiding Katie into the testosterone injections and surgeries in the first place.

76.    Instead, Ms. Hodgins merely noted she prescribed estradiol, consistent with Katie's interest in detransitioning and identifying with her female sex.

77.    Notes for subsequent visits at Fenway Health in 2021 indicate that Katie experienced confusion and uncertainty about gender identity issues, including whether she should detransition, and the course of treatment Fenway Health and professionals there had prescribed for her. There is no indication that Fenway Health and professionals there adequately explored or followed up on those issues and red flags. Instead, those notes indicate that Fenway Health and professionals there continued to prescribe testosterone to Katie until in or about December 2021.

F.    **After leaving Fenway Health and receiving estradiol hormone therapy through other providers to support her detransition, Katie was able to discover her injuries resulting from Fenway Health's wrongdoing.**

78.    On or about March 16, 2022, Katie visited the practice of a provider unrelated to Fenway Health, to establish a primary care relationship and seek hormone therapy to support her detransition. Notes from her intake visit indicate Katie "just decided to reverse from male to female." The primary care provider referred Katie to a doctor familiar with hormone replacement therapy, who prescribed estradiol for Katie.

79.    After starting estradiol subsequent to the March 16, 2022 primary care visit, Katie has continued on an estradiol regimen and now identifies fully with her female sex.

80.    But only later, in or about October 2023 during a conversation with legal counsel, Katie discovered that Fenway Health and professionals there misled her into taking testosterone injections and undergoing the double mastectomy and hysterectomy/oophorectomy surgeries by misrepresenting to her that the testosterone and surgeries were medically necessary and would cure her mental health issues and not harm her. Coincident with that discovery, Katie also discovered that Fenway Health and professionals there negligently and wantonly treated her for gender dysphoria and gender identity issues, failed to care for her in accordance with the applicable standards of care, and caused her great harm as a result. Katie was unable to make these discoveries prior to that time because of her diminished mental capacity—including her anxiety, OCD, autism, and potential attention deficit issues—and because the Responsible Parties, whom she trusted to take care of her and deal with her honestly and not mislead her, suppressed and misrepresented the material facts, such as the scientific basis for the so-called hormone treatment and surgical procedures, the lack of scientific evidence supporting the treatment and procedures, and the fact that Katie was not an appropriate candidate for such treatment and procedures and there was no legitimate mental health basis on which to provide such so-called hormone treatment to her or facilitate the provision of the surgical procedures.

## COUNT ONE – MEDICAL MALPRACTICE AND NEGLIGENCE UNDER THE FEDERAL TORT CLAIMS ACT
### Fenway Community Health Center, Inc. and Each Individual Staff Member

81.    The preceding allegations are repeated and incorporated herein.

82.    Fenway Community Health Center, Inc., Molly McHenry NP, Renee Randazzo, Ralph Vetters MD, Samantha Hodgins NP, Karla HoxhaBrown NP, Samantha Gendron RN, Amy

16

Teasdale RN, Cindy Castor LPN, Rachel Kahn LMHC, Adrianna Graziano MA, Scott Corbett MA, Lissette Garcia, Doreen Clark, and Jojo Amanfu as health care professionals or assistants to those professionals had a duty to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average qualified professional, taking into account the existing state of knowledge in the practice of medicine and health care generally and their respective fields specifically, including the duty to accurately identify the risks of harm to Katie before, during, and after treatments to treat Katie and to protect her from adverse medical conditions, the duty to evaluate and to mitigate against those risks, the duty to call those risks to the attention of Katie's other treating physicians and health professionals, the duty to develop a treatment plan to manage the risks of harm to Katie, the duty to follow up and otherwise to exercise ordinary care to diagnose and to treat Katie, and the duty to inform Katie as to the costs, benefits, and long-term effects of any treatments, including the option of not undertaking testosterone or surgeries.

83.     Yet, nevertheless, the Responsible Parties wholly disregarding their duties aforesaid, failed to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average qualified professional, taking into account the existing state of knowledge in the practice of medicine and health care generally and their respective fields specifically, including the duty to accurately identify the risks of harm to Katie before, during, and after treatments to treat Katie and to protect her from adverse medical conditions, the duty to evaluate and to mitigate against those risks, the duty to call those risks to the attention of Katie's other treating physicians and health professionals, the duty to develop a treatment plan to manage the risks of harm to Katie, the duty to follow up and otherwise to exercise ordinary care to diagnose and to treat Katie, and the duty to inform Katie as to the costs,

benefits, and long-term effects of any treatments, including the option of not undertaking testosterone or surgeries.

84.    As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Katie from foreseeable and avoidable harm.

85.    These failures directly and proximately caused Katie to suffer losses and damages, including, loss of normal use of the body, loss of body parts, pain and suffering, loss of enjoyment of life, medical and other expenses, economic damages in the form of lost income, earning capacity and benefits, and other compensatory damages to the Plaintiff as allowed by law.

86.    At all relevant times, upon information and belief, each of the individual Responsible Parties was employed by or an agent of and was affiliated with Fenway Health and/or its affiliates. As employer of the individual Responsible Parties, Fenway Health and/or its affiliates is vicariously liable for their negligence.

## COUNT TWO – NEGLIGENCE OF FENWAY HEALTH AS CORPORATE RESPONSIBLE PARTY UNDER THE FEDERAL TORT CLAIMS ACT

87.    The preceding allegations are repeated and incorporated herein.

88.    The individuals treating and caring for Katie worked for Fenway Community Health Center, Inc. (the "Corporate Responsible Party").

89.    The Corporate Responsible Party had a duty to comply with policies in place and the standard of care to provide for the safety and proper care of Katie. These policies likely included direction and guidance on coordination of care, informed consent, and proper screening of patients presenting with medical and mental health conditions like Katie.

90. The Corporate Responsible Party violated this duty by failing to adopt adequate policies, by failing to adequately train and supervise its employees regarding these policies, or by failing to comply with these policies and otherwise breaching the applicable standard of care for managing a patient like Katie.

91. As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Katie from foreseeable and avoidable harm.

92. These failures directly and proximately caused Katie to suffer losses and damages, including, loss of normal use of the body, loss of body parts, pain and suffering, loss of enjoyment of life, medical and other expenses, economic damages in the form of lost income, earning capacity and benefits, and other compensatory damages to the Plaintiff as allowed by law.

## COUNT THREE – NEGLIGENCE OF FENWAY HEALTH
## UNDER RESPONDEAT SUPERIOR UNDER THE FEDERAL TORT CLAIMS ACT

93. The preceding allegations are repeated and incorporated herein.

94. Each of the individual Responsible Parties were the express, apparent, and/or implied agents of Fenway Health. Fenway Health is liable for all of the negligent acts and omissions of these individuals and other negligent acts or omissions of their agents under the doctrines of respondent superior and vicarious liability.

95. Fenway Health, through its agents and employees, including but not limited to its nurses, technicians, doctors, and other staff who were its express, apparent, and/or implied agents, had a duty to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average qualified hospital, clinic, or physician's or

counselor's practice, taking into account the existing state of knowledge in the practice of medicine or counseling generally and specifically in their respective specialties, including the duty to identify the medical and mental health needs of the patient, provide appropriate monitoring, coordinate care across providers, and ensure that the patient's medical and mental needs are met, and the duty to follow up and otherwise to exercise ordinary care to monitor and treat Katie and to protect her from adverse medical conditions.

96.     Yet, nevertheless, Fenway Health, disregarding its duties aforesaid, failed to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average qualified hospital, clinic, and medical or counseling practice, taking into account the existing state of knowledge in the practice of medicine or counseling generally and specifically in their respective specialties, including the duty to identify the medical and mental health needs of the patient, provide appropriate monitoring, coordinate care across providers, and ensure that the patient's medical and mental needs are met, and the duty to follow up and otherwise to exercise ordinary care to monitor and treat Katie and to protect her from adverse medical conditions.

97.     As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Katie from foreseeable and avoidable harm.

98.     These failures directly and proximately caused Katie to suffer losses and damages, including, loss of normal use of the body, loss of body parts, pain and suffering, loss of enjoyment of life, medical and other expenses, economic damages in the form of lost income,

earning capacity and benefits, and other compensatory damages to the Plaintiff as allowed by law.

## COUNT FOUR – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER THE FEDERAL TORT CLAIMS ACT
### Fenway Community Health Center, Inc. and Each Individual Staff Member

99.     The preceding allegations are repeated and incorporated herein.

100.    The Responsible Parties are liable to Katie for Negligent Infliction of Emotional Distress because the Responsible Parties' negligence caused Katie to suffer severe emotional distress a reasonable person would have suffered under the circumstances, and it was foreseeable that the Responsible Parties' negligence would cause her to suffer serious mental and emotional harm, accompanied by objective physical symptoms.

101.    As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Katie from foreseeable and avoidable harm, and Katie has suffered emotional pain and suffering, anguish, past and future healthcare expenses, and any and all other compensatory damages.

## COUNT FIVE – FRAUDULENT MISREPRESENTATION UNDER THE FEDERAL TORT CLAIMS ACT
### Fenway Community Health Center, Inc. and Each Individual Staff Member

102.    The preceding allegations are repeated and incorporated herein.

103.    The Responsible Parties, as health care professionals, had a fiduciary duty to Katie to treat Katie honestly and to represent to her accurate facts concerning her medical condition and the medical care provided to her.

104.    Yet, nevertheless, the Responsible Parties wholly disregarding their duties aforesaid, failed to communicate truthfully to Katie.

105.    Instead, the Responsible Parties convinced Katie that testosterone injections and surgical procedures were medically necessary and would cure her mental health problems.

106.    The Responsible Parties misrepresented to Katie that she needed these so-called treatments and procedures, that they were medically appropriate treatment, and that they would be good for her.

107.    The Responsible Parties misrepresented that Katie was an appropriate candidate for so-called "gender-affirming" testosterone injections, breast surgery, and hysterectomy and oophorectomy.

108.    The Responsible Parties failed to disclose to Katie the true nature of these so-called treatments and procedures and the inability of those treatments and procedures to cure her mental health issues. Instead, the Responsible Parties misrepresented the treatments and procedures as necessary, appropriate, and beneficial.

109.    The Responsible Parties (1) affirmatively misrepresented that the testosterone injections, breast surgery, and hysterectomy and oophorectomy were medically necessary and appropriate and that there was no alternative, (2) failed to explain the scientific basis – and lack thereof – for these so-called treatments and procedures, (3) failed to accurately describe the costs and benefits of the treatments and procedures, and (4) failed to disclose to Katie the permanent, detrimental consequences from the treatments and procedures. The Responsible Parties misled Katie into believing, wrongly, that the testosterone injections and removal of her breasts, uterus, and ovaries would cure her mental health problems.

110.    Upon information and belief, each individual staff member of Fenway Health acted with the knowledge and consent of Fenway Health and on its behalf at all relevant times.

22

111.    As a result of the Responsible Parties' misrepresentations, omissions, negligence, and wantonness, Katie underwent the testosterone injections, double mastectomy surgery, and hysterectomy and oophorectomy and related procedures.

112.    Due to the Responsible Parties' misrepresentations, and Katie's reasonable reliance on them given the Responsibilities Parties' positions as her health care providers and purported medical experts, and given her other mental and emotional issues, Katie incurred costs to pay Fenway Health and others for the testosterone injections and surgical procedures, which costs benefited the Responsible Parties and damaged Katie.

113.    Moreover, the Responsible Parties' misrepresentations caused Katie to believe that the so-called treatments and surgical procedures were in her best interests, keeping from her information that would have revealed to her that the representations were false. As a result, Katie did not learn that she had claims against the Responsible Parties until in or about October 2023.

114.    At all relevant times, upon information and belief, the individual staff members of Fenway Health were employed by or were agents of and were affiliated with Fenway Health and/or its affiliates. As employer or principal of each individual staff member, Fenway Health and/or its affiliates is vicariously liable for their conduct.

## JURY DEMAND

115.    Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Katie Coblentz requests that this Court grant the following relief:

A.    That process be issued and served on the United States of America and that it be required to file an answer with the Court within the time prescribed by law;

B.      Award the Plaintiff compensatory and other appropriate damages to which she is entitled or which otherwise would be just in this case, in the sum certain of at least $25 million;

C.      Award Plaintiff's attorneys' fees and costs;

D.      Award Plaintiff pre and post judgment interest; and

E.      Award Plaintiff all other relief to which she may be entitled and as necessary and proper to do justice in this case.

This the 21 day of February 2025.

Respectfully submitted,

/s/ Roy S. McCandless
Roy S. McCandless
BBO#: 642055
**Roy S. McCandless, Esq., PLLC**
125 North State Street
Concord, New Hampshire 03301
Telephone: (603) 841-3671, Ext. 101
Facsimile: (603) 513-2799
roysmccandless@gmail.com

/s/ Joshua Payne
JOSHUA PAYNE (*pro hac vice* application forthcoming)
Alabama Bar No. ASB-1041-A55P
**Campbell Miller Payne, PLLC**
5955 Alpha Rd #1491
Dallas, Texas 75240
Telephone: (214) 316-7156
josh@cmppllc.com

/s/ Samuel J. Whiting
Samuel J. Whiting
Massachusetts Bar No. 711930
**Massachusetts Family Institute, Inc.**
401 Edgewater Pl., Suite 580
Wakefield, MA 01880
Telephone: (781) 569-0400
sam@mafamily.org
