United States District Court
District of Massachusetts

```
                                  )
Katie Coblentz [FKA Katie Anderson],)
                                  )
        Plaintiff,                )
                                  )
        v.                        )   Civil Action No.
                                  )   25-10435-NMG
United States of America,         )
                                  )
        Defendant.                )
                                  )
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiff Katie Coblentz ("plaintiff" or "Coblentz") has filed a complaint against the United States ("defendant" or "Fenway Health") pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b) ("FTCA"), alleging medical malpractice and negligence, negligent infliction of emotional distress and fraudulent misrepresentation.[1]  Defendant responds that plaintiff's claims are time-barred and moves to dismiss.  For the reasons that follow, that motion will be **ALLOWED**.

I. Facts

The Court assumes as true all well-pled facts in the complaint.  In March, 2015, when Coblentz was 19 years old, she visited Fenway Health for "gender-identity issues."  She told

---

[1] As a federally qualified heath center, Fenway Health and its employees are considered to be federal employees.

1

providers that she "realized she was not a boy during puberty" and began feeling discomfort with her gender in 2014.  Plaintiff met with various Fenway Health providers in the following months before beginning hormone therapy via testosterone injections in May, 2015.

In May, 2016, Coblentz returned to Fenway Health for an "assessment of readiness/appropriateness" for a gender-affirming double mastectomy, which plaintiff ultimately underwent in August, 2016.  In January, 2018, during a routine visit regarding the testosterone injections, Coblentz complained of pelvic pain, which a Fenway Health doctor believed was caused by the testosterone injections and uterine atrophy.  The Fenway Health doctor referred Coblentz for a hysterectomy and oophorectomy at a Tufts-affiliated medical facility.  At about that time, Coblentz was also diagnosed with Autism Spectrum Disorder, Obsessive-Compulsive Disorder and Unspecified Anxiety Disorder by a provider independent of Fenway Health.

Coblentz underwent a hysterectomy and oophorectomy in August, 2020.  In July, 2021, during a visit with Fenway Health, Coblentz expressed interest in de-transitioning back to living as a female.  Coblentz felt that her mental health had not improved as a result of her gender-affirming care and that she would be able "to better work through [her] emotional well being [if she was] less focused on physical changes."  Accordingly,

she was prescribed estradiol, a form of estrogen, by Fenway Health.

During subsequent visits in 2021, Coblentz expressed confusion and uncertainty about her gender identity, her decision to de-transition and the course of treatment she had received at Fenway Health.  By December, 2021, Fenway Health had stopped prescribing testosterone to Coblentz.  In March, 2022, plaintiff visited a healthcare provider unrelated to Fenway Health to continue hormone therapy for de-transitioning. Coblentz was again prescribed estradiol.

In October, 2023, Coblentz met with legal counsel who informed her that Fenway Health had misled her into undergoing the testosterone injections, double mastectomy and hysterectomy/oophorectomy surgeries by "misrepresenting to her [that those treatments were] medically necessary and would cure her mental health issues and not harm her."  Plaintiff alleges that the providers at Fenway Health concealed the fact that gender affirming care is not supported by adequate scientific evidence.  Coblentz and her legal counsel submitted an administrative claim to the Department of Health and Human Services ("HHS") on March 1, 2024.  HHS denied that claim in September, 2024, and plaintiff then commenced the instant suit on February 21, 2025.

## II.  Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).[2]

## III. Statute of Limitations

Under the FTCA, a tort claim against the United States is "forever barred" unless it is presented in writing to the relevant administrative agency within two years after the claim accrues. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

### A. Accrual and the Discovery Rule

#### i. Legal Standard

Although a tort claim generally accrues at the time of plaintiff's injury, under the so-called "discovery rule" the

---

[2] Although defendant brings its motion under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), motions to dismiss based on the FTCA's statute of limitations should be brought under Rule 12(b)(6) only or considered pursuant to Rule 56 (summary judgment). Morales-Melecio v. United States, 890 F.3d 361, 367 (1st Cir. 2018).  Accordingly, the Court will proceed under Rule 12(b)(6).

limitations clock does not begin to run until the plaintiff "knows, or reasonably should know, both that he is injured and what caused the injury." Sanchez v. United States, 740 F.3d 47, 52 (1st Cir. 2014).

A plaintiff need not know every detail about his injury and its cause, including whether it was negligently inflicted, for the limitations period to begin. See Morales-Melecio, 890 F.3d at 369.  Actual knowledge is also not necessary for a claim to accrue.  The standard is whether a reasonable plaintiff objectively should have known or discovered both the injury and the government's causal connection to it. Donahue v. United States, 634 F.3d 615, 623-24 (1st Cir. 2011).  Thus, the accrual of the limitations period will be delayed only when that information is incapable of "detection through the exercise of reasonable diligence." Sanchez, 740 F.3d at 52.

### ii. Analysis

In the instant case, plaintiff alleges she was injured by "undergoing unnecessary, and thus harmful, testosterone injections and surgeries" and that her injury was caused by

> Fenway clinicians misleading her into believing the testosterone and surgeries were medically necessary, beneficial, and scientifically proven.

Plaintiff contends that she could not have discovered Fenway Health's "misrepresentations, omissions, negligence, and

5

wantonness" until she received a second medical opinion on March 16, 2022.  The Court disagrees.

Plaintiff began the process of de-transitioning in July, 2021.  By then, Coblentz was aware she wanted to live as a female but no longer had certain female anatomy.  "Her injury was then, by its nature, complete and obvious." See Sanchez, 740 F.3d at 52.  The cause (the preceding six years of gender-affirming care) was also known and obvious.  At that point, a reasonable person would question whether it had been appropriate for doctors to prescribe testosterone and perform a double mastectomy, hysterectomy and oophorectomy, given the rarity of de-transitioning. See id. at 52 ("The death of a generally healthy woman in childbirth is sufficiently rare . . . so as to make most reasonable people ask why it happened.").

Armed with that information (with respect to her knowledge of a claim),

> it [was] incumbent upon [Coblentz] to bear the burden of seeking further advice from the medical and legal communities to decide whether [she] has a viable cause of action.

Roldón-Barrios v. United States, 2025 WL 2954921, at *2 (1st Cir. Oct. 20, 2025).  Coblentz retorts that her

> confusion and uncertainty about whether transitioning was right for her says nothing about her eventual discovery that Fenway had actively misled her[.]

That argument overlooks the fact that her confusion and uncertainty manifested her burden to investigate whether she had been misled.  The caselaw makes clear that Coblentz did not need to "know that the acts legally constitute[d] medical malpractice" in order for the statute of limitations to run. Cascone v. United States, 370 F.3d 95, 104 (1st Cir. 2004).

Even if Coblentz needed to know of the misrepresentation and a second opinion was needed to discover the misrepresentation, she should have sought such an opinion well before March, 2022.  Coblentz avers that she was "under the influence" of Fenway Health until March, 2022, and was therefore "forced to rely upon what she was told" until that time, preventing her from discovering her injury and its cause.  The Court is unpersuaded.  As soon as Coblentz expressed a desire to de-transition, Fenway Health immediately prescribed estradiol. Fenway Health allegedly continued to prescribe testosterone until December, 2021, but in any event, by January, 2022, Fenway Health was no longer providing any male-gender-affirming care to Coblentz.  Thus, to the extent Fenway Health ever misled or influenced plaintiff, such conduct had ceased by January, 2022.

Finally, plaintiff contends that the objective standard on which the discovery rule depends is actually context-specific and thus her mental illness prevents accrual of the claim.  The caselaw Coblentz proffers in support of that contention is

7

inapposite.   In Patterson v. United States, the First Circuit explicitly declines to decide whether mental incapacity tolls the accrual of an FTCA claim. 451 F.3d 268, 272 (1st Cir. 2006) ("Thus, even assuming arguendo that mental incapacity could toll the accrual of an FTCA claim . . . ."). Meléndez Colón v. Rosado Sánchez is similarly unhelpful for plaintiff because the quoted passage concerns actual knowledge of the injury, which is not required to initiate the limitations period. 995 F.3d 262, 267 (1st Cir. 2021).

In sum, the statute of limitations began to toll before March, 2022, and thus Coblentz's filing of her claim with HHS was not at all timely.

## B. Equitable Tolling

Plaintiff argues, in the alternative, that even if her claim accrued before March, 2022, the statute of limitations should be equitably tolled until that time because: 1) her mental health issues were exacerbated by her course of treatment at Fenway Health and 2) Fenway Health fraudulently concealed her injury.   Coblentz must establish that she has pursued her rights diligently and that some extraordinary circumstance stood in the way of timely filing. Duke v. Cmty. Health Connections, Inc., 355 F. Supp. 3d 49, 56 (D. Mass. 2019).   The First Circuit uses a five-factor test when assessing a party's entitlement to equitable tolling:

a lack of actual notice of a time limit, a lack of constructive notice of a time limit, diligence in the pursuit of one's rights, an absence of prejudice to the opponent party and the claimant's reasonableness in remaining ignorant of the time limit.

Id. at 57. In the instant case, the parties have concentrated primarily on plaintiff's diligence and reasonableness in remaining ignorant of the time limit.

### i. Mental Illness

A mental illness may toll the time to file an administrative claim only if the plaintiff has demonstrated that it was so severe that the plaintiff was

unable to engage in rational thought and deliberate decision making sufficient to pursue [their] claim alone or through counsel.

Bartlett v. Dep't of the Treasury, 749 F.3d 1, 12 (1st Cir. 2014). Evidence of a diagnosis is not sufficient, standing alone, to make such a showing. Melendez v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 38 (1st Cir. 2001).

In the instant case, Coblentz has provided nothing more than her diagnoses and conclusory allegations that they rendered her "unable to meaningfully assess her condition or connect it to any potential wrongdoing." Such evidence is insufficient to meet plaintiff's heavy burden of proving entitlement to equitable tolling and is inconsistent with the factual record. As noted earlier, Coblentz engaged in rational thought and deliberate decision making in July, 2021, when she chose to de-

9

transition.  Her decision to reverse the course of treatment she had pursued for the preceding six years demonstrates that she had the mental acuity necessary to pursue her claim.

### ii. Fraudulent Concealment

For plaintiff to succeed in equitably tolling the statute of limitations on the basis of fraudulent concealment, she must demonstrate that the defendant

> engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and the plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence.

Callahan v. United States, 426 F.3d 444, 454 (1st Cir. 2005).

Here, Coblentz contends that Fenway Health fraudulently concealed information "about the efficacy of the testosterone and surgeries" and thus she could not realize she had been injured and misled until she met with an independent provider in March, 2022.  That argument is unavailing.  There is no evidence of actual concealment; plaintiff does not allege that Fenway Health providers ever withheld information when asked nor that the information was "inaccessible or inherently unknowable." Camerano v. United States, 196 F. Supp. 3d 172, 179 (D. Mass. 2016).  Indeed, plaintiff's opposition cites a "systematic review [that] found considerable uncertainty about the effects" of hormone therapy based on research studies published between 1996 and 2023,

10

confirming that evidence of the type [plaintiff] contend[s] was fraudulently concealed by the government was available in the timeframe when [plaintiff's claim] would have been timely.

W.J. v. Sec'y of Health & Hum. Servs., 93 F.4th 1228, 1242 (Fed. Cir. 2024) (declining to toll statute of limitations where plaintiff alleged the government fraudulently concealed evidence of a connection between vaccinations and autism).

Because there is no evidence that Fenway Health deliberately concealed information nor that such information was undiscoverable in the exercise of ordinary due diligence, fraudulent concealment cannot serve as a basis for equitable tolling in this case.

## ORDER

For the foregoing reasons, defendant's Motion to Dismiss (Docket No. 13) is **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated:  March 16 , 2026

11